### H. C. WALKER v. THE STATE.

No. 8693.  Delivered December 17, 1924.

Rehearing denied January 23, 1925.

#### 1.—Murder—Jury Commissioner—Held Qualified.

The fact that one of the jury Commissioners which selected the jury in this case had a suit pending in the district court, which required the intervention of a jury, did not disqualify said jury commissioner, and for the reason urged the court properly refused to set aside the venire in this cause.

**2.—Same—Special Venire—Jury Commissioners—Qualified.**

Objection was made to the venire upon the averment that the jury commissioner selected some qualified jurors from the list furnished them but disregarded and omitted other qualified jurors. Evidence was heard upon the motion, and there is nothing to show that there was any abuse of discretion lodged in the jury commissioners. Neither ground of objection is embraced in Art. 679 and 680 C. C. P. permitting a challenge to the array of jurors for certain named reasons. Art. 681 C. C. P. explicitly denies the right to challenge the array when the jurors have been selected by the jury commissioners.

**3.—Same—Grand Jury—Assailing Validity of—In Motion to Quash Indictment.**

A motion to quash the indictment involving an attack upon the qualifications, and legality of the grand jury must be presented in the manner, and the time and for the reasons specified in Arts. 408 to 413 and Art. 570, C. C. P. Appellant fails to bring himself within any exception which would permit an attack upon the action of the grand jury, in a motion to quash the indictment. If the accused be in jail, he must request that he be brought into court for the purpose of challenging the array. Art. 409 C. C. P.

**4.—Same—District Court—92nd Judicial District—Jurisdiction of.**

The district court of the 92nd Judicial District in Young county created by the act, of the 38th Leg., Chap. 76, R. S., page 162, was clothed with jurisdiction, in all civil, and all criminal cases, proceedings and matters of which district courts of this state have or may be given jurisdiction of by the laws of this state, which includes anything which any other district court could do, including the organization of a grand jury.

**5.—Same—Change of Venue—Bills of Exception to—Filed Too Late.**

The bill of exception complaining of the refusal of the court to grant appellant a change of venue, was not filed in time, and cannot be considered. The statement of facts bringing the evidence upon this subject forward was, not filed in the court below until April 23, 1924, the court having adjourned on January 26th prior thereto. Art. 634, C. C. P., requires that it be filed during the term of court, at which the order was made.

**6.—Same—Special Charge—Issue Not Raised—Properly Refused.**

Where a special charge presents an issue not raised by the evidence it, should not be given. Appellant's special charge to the effect that appellant had the right to shoot so long as it reasonably appeared to him that danger existed, was not demanded by the facts. Such charge is only called for where the facts make it applicable.

**7.—Same—Charge of the Court—On Manslaughter—Demanded by Facts.**

The court omitted from his charge any instruction on the law of manslaughter. A special charge submitting this issue was requested and refused. Communicated threats were shown. A proper charge on self-defense was given. Although the jury rejected the theory of self-defense, they might have found that deceased did or said something at the time of the killing, which in connection with the threats and previous relation of the parties rendered appellant's mind incapable of cool reflection, and the killing occurred under such circumstances, and under the evidence as presented, the issue of manslaughter should have been submitted.

Appeal from the District Court of Young county. Tried below before the Honorable Walter F. Schenck, Judge.

Appeal from a conviction of murder, penalty, thirty-five years in the penitentiary.

*Binkley & Binkley* of Graham, Attorneys for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

HAWKINS, Judge.—Conviction is for murder, with punishment assessed at confinement in the penitentiary for thirty-five years.

Appellant filed an instrument styled a "Motion to Quash the Venire," which had been drawn from which to select a jury. By whatever name called it was in fact a challenge to the array of jurors. As one ground of the motion it was averred that one of the jury commissioners which selected the jurors had a suit pending in the district court which required the intervention of a jury, which fact is claimed to have disqualified the commissioner under Art. 5122, R. C. S., and Art. 384, C. C. P. The "Young County Lumber Company," a partnership, had a suit pending, and one of the jury commissioners was one of the partners in such concern. Whitten v. State, 43 Texas Crim. Rep., 468, — S. W. —, and Bryant v. State, — Texas Crim. Rep. —, 260 S. W. 598 are directly in point and authority against the contention that for the reason urged the venire should have been set aside. The other objection to the venire was based upon the averment that the jury commissioners selected some qualified jurors from the list furnished them, but disregarded and omitted other qualified jurors. From an examination of the evidence heard upon the motion we perceive nothing to indicate to any abuse of discretion lodged in the jury commissioners under the provisions of the statute for their guidance. Art. 5127, Vernon-Sayles C. S. It will further be observed that neither ground of objection is embraced in Arts. 679 and 680, C. C. P. permitting a challenge to the array of jurors for certain named reasons. Art. 681, C. C. P. explicitly denies the right to challenge the array when the jurors summoned have been selected by jury commissioners.

Appellant sought to quash the indictment upon the same grounds urged in an effort to set aside the venire, which have just been considered in discussing bill of exception number one. It was really an indirect attack upon the qualification and legality of the grand jury. The time and attention of this court is so frequently demanded in considering efforts to impeach the acts of grand jurors, and to set aside indictments, which attacks are not made at the time, nor in the manner, nor for the only reasons specified in Arts. 408, to 413, and Art. 570, C. C. P., that we found it advisable to review said articles and the authorities construing them in the recent case of Powell v. State (No. 8585 opinion November 19th, 1924, now pending on rehearing). We undertook in that opinion to state what we understood to be the ex-

ceptions to the restrictions and operation of the articles of the Code of Procedure just referred to, and we deem it unnecessary at this time to write further upon the subject. Appellant fails to bring himself within any exception which would permit an attack upon the action of the grand jury through a motion to quash the indictment. His effort to excuse himself from failing to present a challenge to the array of grand jurors does not meet the requirement that if in jail an accused must make request that he be brought into court for that purpose. Art. 409, C. C. P.; Brown v. State, 32 Texas Crim. Rep., 119, 22 S. W. 596; Barkman v. State, 41 Texas Crim. Rep., 105, 52 S. W. 73; and other authorities cited on page 180, Vernon's Crim. S. Vol. 2. However, we deem this of little importance as the record reveals that no ground of challenge to the array would have been available even had accused been present in court. Hickox v. State, 95 Texas Crim. Rep., 173, 253 S. W. 823.

The indictment was returned by a grand jury organized by the district court of the 92d Judicial District in Young County. It is asserted (a) that said court was of limited jurisdiction and had no power to organize a grand jury because not specifically authorized to do so by the act creating it, and (b) that the act of the legislature creating said court was void because its existence was limited to two years. Carter v. M. K. & T. Ry. Co. (Sup. Ct. of Texas) 157 S. W. 1169, is direct authority against the last proposition. The court in question was created by act of the 38th Leg. Ch. 76, R. S. p. 162. In section two of said act is found this language:

"The jurisdiction of said new district court of Young County shall extend to and include all civil and all *criminal cases, proceedings* and *matters* of which district courts of this State have or may be given jurisdiction by the Constitution or by the laws of this State."

And again in section nine it is provided:

"The civil and criminal jurisdiction conferred by this Act upon said new district court of Young County, Ninety-second Judicial District shall be treated and held to be, concurrent with the civil and criminal jurisdiction now vested in said district court of Young County, Thirtieth Judicial District of Texas."

From the language quoted we fail to perceive any limitation upon the power of the court preventing it from doing anything which any other district court could do, including the organization of a grand jury.

Appellant requested a change of venue. The evidence taken upon the motion has been examined carefully. It does not occur to us that the trial court abused his discretion in overruling the application. Some prejudice against appellant may have existed in and around Graham where the homicide took place, but it was not shown to have extended generally to other portions of the county. We think appellant did not discharge the burden resting upon him to show the existence of such

prejudice as rendered it improbable that he could obtain a fair and impartial trial. (See Carlile. v. State, — Texas Crim. Rep., —, 255 S. W. 990, and authorities therein referred to). We had passed upon the merit of the matter before noticing that the statement of facts bringing the evidence upon this subject forward was not filed in the court below until April 23d, 1924. Article 634, C. C. P., requires that it be filed during the term of court at which the order was made. Court adjourned on January 26th. Even if the question presented had merit we would be precluded from considering it under the statute.

Appellant requested a special charge advising the jury that if he had been informed that deceased had made threats to take appellant's life, and believed such information to be true, he would have the right to act on such information, although the jury should find that no such threats were in fact made. This subject seems to have been fully covered in the seventh paragraph of the main charge, and the refusal of the special charge was not erroneous.

Complaint is made at the refusal of a special charge to the effect that appellant had the right to continue to shoot as long as it reasonably appeared to him that danger existed. Such charge is only called for where the facts make it applicable. This is illustrated by the authorities to which we are referred, viz: Overcash v. State, — Texas Crim. Rep., —, 148 S. W. 703; Clark v. State, 56 Texas, Crim. Rep. 295, 120 S. W. 179; Best v. State, 61 Texas Crim. Rep., 554, 135 S. W. 582; Smith v. State, 57 Texas Crim. Rep., 455, 123 S. W. 701. We have not detected any evidence in the present case calling for such instruction, nor is our attention directed to such evidence in appellant's brief. Only two or three shots were fired by accused. They seem to have been discharged rapidly. No change in position of either appellant or deceased took place during the shooting. Woodward v. State, 54 Texas Crim. Rep:, 89, 111 S. W., 941; Medford v. State, 89 Texas Crim. Rep., 1, 229 S. W. 504.

The court omitted from his charge any instruction relative to the law of manslaughter. A special charge submitting this issue was requested and refused. It is the alleged error based on this action of the court that gives us most concern. We will not undertake to set out the evidence in detail but only so much of it as occurs to be pertinent to the question just suggested. Appellant lived at and conducted a garage about a mile from the city of Graham. Deceased lived some one hundred yards east of this garage. Appellant had furnished some money which had been used by deceased in the purchase of land. Appellant claims this land had been sold by deceased without making provision for the repayment to appellant of the money furnished by him. The killing occurred on Monday morning at a point some forty steps from the garage. Deceased was driving a truck behind which had been hitched a sled with a water barrel on it; he was apparently on the way to a well to haul a barrel of water. It was a controversy

between the state and appellant whether deceased stopped his truck and motioned for appellant to come out of the garage, or whether appellant came out and stopped the truck. It is undisputed that deceased was sitting in the truck behind the driving wheel at the time the shots were fired by appellant who was standing on the ground near the front of the truck. It was also established that some words passed between appellant and deceased. A small boy who was on the sled heard them talking but does not know what was said. No other person save appellant was near enough to hear what this conversation was, although witnesses who were some distance away and who saw the parties testified that they appeared to be talking to one another. It is in evidence that some time prior to the killing deceased and his wife had separated. Some trouble had arisen with reference to the possession of the children. The wife of appellant and another lady seem to have interested themselves in behalf of Mrs. Bishop (deceased's wife), and something appellant said relative to the matter was communicated to deceased, in reply to which he said "he would kill that damned old fool yet." The same witness who testified to this threat said that about a month later deceased was talking of selling out and going to the state of Arkansas, in connection with which he made this statement, referring to appellant; "I will never leave here satisfied and leave that old s— o— a b— alive;" that later on he showed witness a large pistol and said: "A bullet out of that would stop old Walker from selling any more oil." Witness responded to this remark by saying, "Yes, if it hit him in the right place, but you do not intend to do that," to which deceased replied, "Just as much as I intend to live to get there, I mean what I say." This witness further testified that deceased said he would give three lots to anybody who would burn out the garage which belonged to appellant. Another witness testified that deceased had shown him a pistol about two months before the killing and in referring to appellant said: "That old s— of a b— would never hear that gun bark but once." These witnesses testified that the threats were communicated to appellant by them. Appellant himself testified that he received information of the threats mentioned, and also about other threats claimed to have been made by deceased; that appellant paid little attention to the threats of which he had heard until he had a personal conversation with deceased on Friday before the killing on Monday. Appellant says at that time deceased brought up the subject of having sold the land which appellant had furnished the money to pay for and when appellant asked him what he intended to do about it that deceased replied he "would attend to that part himself," and that he cursed appellant, calling him a s— of a b—; appellant claims deceased was armed at the time, that appellant was unarmed and walked off and left deceased; that deceased told appellant he would settle that account with him when he got ready and for him (appellant) to attend to his own business and let him alone. One of the communicated

threats was a statement by deceased that if Walker ever dunned him again he would kill him. On the morning of the killing appellant sent the following note to deceased:

"G. W. Bishop: I will give you till noon to settle with me. Order to Meyer will not be accepted. H. C. Walker."

Appellant testified he was under the shed at the garage at the time he saw deceased drive his truck toward it; that the car stopped some forty steps from where appellant was. We quote appellant's testimony as to what occurred then.

"Mr. Bishop was in the car. He motioned to me to come to him. He motioned to me to come to him. He motioned with his right hand, he takened it off of the steering wheel and motioned to me like that. I went down to the truck. I then placed my right hand upon the windshield and my left hand on the cab and stood there with my left foot on the running board and talked to him. He mentioned an account that stood between us, brought it up about the payment that I had made for him on his land. He proposed to give me an order on Mr. J. E. Meyers for the settlement of the matter. I refused to accept it because it hadn't Mr. Meyer's O. K. on it. That was before the difficulty, right at the time the difficulty occurred. That's the conversation that occurred there. I told him that nothing but the cash would satisfy me after he had gone as far as he had. He looked right straight at me like that (indicating). He made a motion back this way and said 'You can go to Hell, you son-of-a-bitch.' He started up under the steering wheel with the left hand and was reaching for his right pocket with the other hand, the right hand was reaching to his right pocket, And then I saw something flash that I believed to be a gun in his pocket. I then dropped back as quick as I could and drew my gun and fired."

Appellant is corroborated by the testimony of his wife as to the stopping of the truck and deceased making a motion to appellant; also by other witnesses who were some distance from the scene of the killing but who testified to a movement on the part of deceased with his hand which might indicate that he was attemping to secure a weapon. No pistol was found on the body of deceased. Mr. Brown, who reached the scene of the killing first within two or three minutes after it occurred, stated that he saw no weapon about deceased; that appellant requested him to telephone for a doctor and the officers; that he left to telephone and that deceased's wife got to the truck about the time he left and that when he came back she was up in the truck with her arms around the body of deceased. It was appellant's claim upon the trial that Mrs. Bishop at this time removed the pistol from deceased's body and that this accounted for none having been found upon his person. This was denied by Mrs. Bishop.

We have not undertaken to give in detail the state's evidence combatting the issues raised by the testimony of appellant and his wit-

nesses. We have stated more at length the defensive evidence because the issue of manslaughter, if raised at all, arises from it. Of course the issue of self-defense was raised and appellant was given the benefit of a charge thereon, but the question is, did not the same evidence also raise the issue of manslaughter? As supporting his contention that this issue should have been submitted appellant refers us to Burnett v. State, — Texas Crim. Rep., —, 112 S. W. 74; Lundy v. State, —Texas Crim. Rep., —, 87 S. W. 352; Green v. State, — Texas Crim. Rep., —, 126 S. W. 860; Clark v. State, — Texas Crim. Rep., —, 102 S. W. 1136. We quote from Burnett's case the following:

"It is true the same testimony raises the issue of self-defense; but there is testimony in the record from which the jury might have believed that appellant was not justified, either under the doctrine of actual or apparent danger, in taking the life of deceased, and yet would have been fully justified in holding that his mind was in such condition as to make the killing manslaughter."

This same question was considered at length in Pickens v. State, 86 Texas Crim. Rep., 657, 218 S. W. 657, the facts of which case are in many respects similar to the present one. Also in Lewis v. State, 89 Tex. Crim. Rep., 345, 231 S. W. 113 the same point was again up for review. As we there said, "The jury had the right, and it was their province, to believe any part of the testimony of appellant or any other witness which to them seemed reasonable, and on the other hand to reject all or any part to which they did not give credence." In the present case the testimony upon the issue of self-defense was rejected. The jury may have believed appellant "acted in a manner so precipitate as not to excuse him entirely, but in a manner in which— if they had been so privileged—the jury might have reduced the offense to manslaughter." (Pickens v. State, supra.) How far the jury accepted appellant's evidence we cannot know, but facts were testified to, which if believed, would show that deceased was refusing to pay or secure the repayment of money advanced by appellant, and when approached about it was violently abusive; that he made many serious threats to kill appellant which had come to the latter's knowledge. Although the jury rejected the theory that accused acted in self-defense, they might have found that deceased did or said something at the time of the killing which in connection with the threats and previous relation of the parties rendered appellant's mind incapable of cool reflection, and that the killing occurred under such circumstances. We cannot escape the conclusion that under the evidence the issue of manslaughter should have been submitted. Upon the subject, in addition to the authorities already referred to, we cite Steen v. State, 88 Tex. Crim. Rep., 256, 225 S. W. 531; Tait v. State, — Tex. Crim. Rep., —, 260 S. W. 584; Thompson v. State, 96 Tex. Crim. Rep., 87, — S. W. —.

The court's action in refusing a continuance sought by accused on account of absent witnesses, and many other matters complained of are

not reviewed for the reason that they either will not likely arise upon another trial, or the questions presented are not thought to be of such importance as to require consideration.

For the omission to charge upon the law of manslaughter, the judgment is reversed and the cause remanded.

*Reversed and remanded.*