# E. R. McBee v. The State.

No. 13867.   Delivered February 11, 1931.
Rehearing Denied December 23, 1931.

The opinion states the case.

*Shropshire & Adkins,* of Brady, and *M. E. Blackburn,* of Junction, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

LATTIMORE, JUDGE.—Conviction for selling intoxicating liquor; punishment, two years in the penitentiary.

There were but two witnesses in the case, the alleged purchaser and another young man who accompanied him on said occasion.   Each of

these witnesses by many statements and expressions appearing in their testimony, positively identify appellant as the man who sold the intoxicating liquor. To set out at length these statements would involve a good deal of space. We will, however, quote from each to some extent. Lang swore: "We saw this defendant out at the woodpile. * * * I heard Jack Bratton * * * ask him if he had any whisky. He answered yes. * * * The three of us went down to where it was. * * * We asked him the price of it. He said $2 a pint. Jack asked him that. * * * When we got close to the liveoak thicket this defendant got the whisky. He got it from under some leaves. He got a pint. He handed it to Jack Bratton. Bratton handed him the money. He handed him $2. Then the three of us went back to the house. * * * It was whisky." On cross-examination this witness said he did not remember what time of day it was that he first met McBee that day. That he did not know whether this defendant was the same man that he saw that day or not. On re-direct examination he said: "He went by the name of Poke McBee. We saw him when we got there. I saw him here today." The other man, Bratton, swore that he knew the defendant, and knew him at the time of the alleged sale. He further said he thought he saw him December 17, 1925. We quote: "I saw him at Lemons' place in McCulloch county, Texas. I had a conversation with him. Leo Lang was with me. We asked this defendant and told him that we wanted to buy some whisky. He said that he did not have any. He stepped off toward the house. * * * When he came back we walked off a few yards. * * * He got the whisky. * * * When he got the whisky and gave it to us, I gave him part of the money." In his cross-examination this witness said: "I went up there to see Tate Lemons. * * * I did not see Lemons. * * * We saw McBee. * * * I saw him here yesterday morning, was the first time I saw him since that day. No, I believe I did meet him in the road a few days after that. * * * I think we stopped and talked a few minutes. * * * I will not swear positively that this is the same man that was out there that day." On re-direct examination this witness said: "When I got to the house McBee was, I suppose, the first fellow that I saw. I saw McBee first. That was the only one that I saw at the time. * * * I paid this man something over a dollar. He delivered the whisky to me."

Appellant contends in his brief that there was a failure to identify him; that in their retirement the jury received evidence other than that given by witnesses; that appellant was Bratton's agent in procuring the whisky. In his charge the court told the jury: "Even though you may believe beyond a reasonable doubt that the witness, Jack Bratton, bought a pint of whisky at the time and place alleged, you cannot convict this defendant unless you believe beyond a reasonable doubt that the defendant is the identical person, if any, who sold said whisky and if you have

a reasonable doubt as to this you will find the defendant not guilty." The statement of facts reveals that practically all through the testimony each of the two witnesses directly and positively identified appellant, but that near the close of the cross-examination of each there was an affirmation that he would not say positively that appellant was the man. In this condition of the record we do not think the jury without testimony to support their finding that he was the seller of the whisky.

Upon the question of misconduct of the jurors, there was no testimony heard by the trial judge when the motion for new trial was presented, and none is here presented either by recitals in a bill of exceptions or by separate statement of facts. Bill of exception No. 2 seeks to bring forward this complaint. Same sets out a lengthy excerpt from appellant's motion for new trial, also the contents of an affidavit attached to said motion, in effect, that a juror in the case had told the affiants that he did state to his fellow jurors as follows: "That he did not believe the testimony given by the witness, Jack Bratton, upon the trial hereof but that said witness had testified before the grand jury when the indictment was returned, and had there testified differently from his testimony given upon this trial, and that in his testimony before said grand jury the said Jack Bratton had testified that he had bought a pint of whisky from R. R. McBee and had paid for therefor. That he did not believe the testimony given by the witness, Jack Bratton, upon the trial but that he and the other members of said jury took the testimony of said witness given before the grand jury that returned the indictment, and regarded same as true, and convicted the defendant upon such testimony so given by said Jack Bratton and the witness Leo Lang before the grand jury; and that if it had not been for the testimony given by said witnesses, Jack Bratton and Leo Lang, before said grand jury, that he would not have voted for a conviction in this cause."

On the hearing of the motion for new trial appellant offered the testimony of the two men who had made said affidavit, and his own testimony, to substantiate the averments in his motion. The bill sets out that the trial court refused to hear said parties or any of them concerning said matters; that the makers of said affidavit would have sworn to the matters set up in same.

We perceive no error in the action of the trial court in declining to hear this testimony. While the witness Bratton swore that he was before the grand jury which returned this indictment, neither he nor any other person gave testimony as to what testimony he gave when before said grand jury. If the juror Evans, while in their retirement, had stated to other members of the trial jury his belief that Bratton did not swear the truth on this trial, and his belief that Bratton swore differently while before the grand Jury,—and if he had even ventured his belief as to what Bratton must have testi-

fied when before the grand jury,—this would be a matter of which neither the trial court nor this court could take cognizance. Many cases have followed and quoted with approval what this court said in Jack's case, 20 Texas App., 656. See Todd v. State, 93 Texas Crim. Rep., 567, 248 S. W., 695; Moore v. State, 94 Texas Crim. Rep., 492, 251 S. W., 1086; Ross v. State, 100 Texas Crim. Rep., 299, 273 S. W., 582; Taylor v. State, 101 Texas Crim. Rep., 204, 274 S. W., 622; Straley v. State, 106 Texas Crim. Rep., 131, 290 S. W., 766; Rachels v. State, 106 Texas Crim. Rep., 656, 293 S. W., 1118; Jordan v. State, 107 Texas Crim. Rep., 311, 296 S. W., 582; Bloxom v. State, 112 Texas Crim. Rep., 341, 16 S. W. (2d) 1098. We reproduce the quotation from said Jack's case, supra, as set out in the Ross case, supra, opinion by Morrow, P. J.: "It seems to us that it would be dangerous and exceedingly pernicious practice for the courts to permit the sanctity of the jury room to be invaded, and jurors to be interrogated as to the arguments used in their deliberations, and the influence of such argument upon their minds, and the reasons and considerations upon which their verdicts were based. There might arise, perhaps, an extreme case in which such a practice would be tolerated to prevent flagrant wrong and injustice, but this court would not be willing to sanction the procedure unless it should manifestly appear that the ends of justice imperatively demanded it."

It is also stated in said bill of exception that process was prayed for in said motion for new trial for all the jurors. Said motion was filed May 24, 1930, and if the fact that same contained a prayer for process of any kind was then brought to the attention of the trial court or the district clerk,—or if any request was then made for process for the jurors, it is nowhere shown. When the motion for new trial was heard on May 28th, same was overruled. There is no showing that any process had been issued for any of the jurors, or that same had been asked other than the prayer for same which was in the motion for new trial. In his qualification to the bill of exception the court certifies that the motion was acted on at the request of the attorney for the appellant, and that no process was refused unless the overruling of the motion amount to such refusal. Nothing appears showing any necessity for an order from the court for process for jurors. It is not shown that any application for same had been made to the clerk, or that he had refused to issue such process. The bill shows affirmatively that one juror was present at the hearing of the motion for new trial, but was not called to testify, and the motion was overruled. Under the facts we think the bill shows no error.

Appellant argues that the court should have submitted the theory of his agency for Bratton in purchasing the whisky. The special charge on this theory does not show to have ever been presented to the court below, or called to his attention, nor is there any bill of exception to its refusal.

The contention seems to be that the whisky delivered to Bratton by appellant belonged to one Lemons, and that appellant merely got it from Lemons for Bratton. The testimony of Bratton is that on the occasion in question he asked appellant, when he reached the place where he obtained the whisky, where Lemons was, and appellant said he was not there and he did not know where he was. It is further set up that appellant said to Bratton that he had no whisky, but that he stepped aside, came back in a few minutes, and conducted Bratton and Lang down the hill to a point where he delivered Bratton the whisky, and Bratton paid him all or part of the price. These facts do not support the theory of agency, or call for a charge on same. Sebastian v. State, 44 Texas Crim. Rep., 510, 72 S. W., 849; Rippey v. State (Texas Crim. App.), 81 S. W., 531. Lang swore positively that appellant told Bratton, as soon as they met him, that he had the whisky,—took them down to where it was concealed, handed the bottle of whisky to Bratton, who paid him $2 for it.

We have examined the record carefully, but are of opinion that no error appears, and the judgment will be affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

MORROW, Presiding Judge.—The testimony of Bratton, while qualified as to the identity of the seller, is certain to the point that he acquired the liquor from the man who Bratton took to be the appellant. Bratton's testimony, as understood, may be summarized as follows: He and Lang went to the domicile of Lemons to get whisky. McBee was seen but Lemons was not. Upon being informed that Bratton and Lang wanted to buy whisky, McBee said he had none. Some one called McBee and he started toward the house. After a few minutes he returned and said to Bratton and Lang, "Come on with me, I think we can get some whisky"; that he did not have any whisky himself but that Lemons had some. Lemons was not present or seen by Bratton, but he followed McBee down the hill to a place where he delivered a bottle of whisky and received some money in part payment for it. Bratton said he did not know whether or not the liquid which he purchased was whisky.

Based upon many precedents which are collated in Branch's Ann. Tex. P. C., 713, sec. 1248, it is said that "if defendant is in no way interested on behalf of the seller but is only acting as agent of prosecutor, he is not guilty of making a sale." The soundness of the principle stated has been reaffirmed in many cases. Among them are Gentry v. State, 96 Texas Crim. Rep., 374, 257 S. W., 1102; Floyd v. State, 102 Texas Crim. Rep., 392, 278 S. W., 206. When the evidence is such that if believed by the jury it would warrant their conclusion that in making the sale of intoxicating liquor the accused on trial was acting solely for the purchaser and not for the seller, it is error to refuse to give

an instruction to the jury to the effect that if they found such to be a fact there should be an acquittal. See Colter v. State, 95 Texas Crim. Rep., 657, 255 S. W., 406, and cases cited. On the other hand, if the evidence is not such as to raise an issue of fact on the matter of agency for the purchaser, the refusal of such a charge would be proper. That is to say, if the connection of the accused with the sale of the whisky was as agent for the seller, such a charge would not be required and should not be given. See Jones v. State, 95 Texas Crim. Rep., 574, 255 S. W., 419; Bostwick v. State, 95 Texas Crim. Rep., 599 255 S. W., 422; Wilson v. State, 103 Texas Crim. Rep., 171, 280 S. W., 213; Clark v. State, 106 Texas Crim. Rep., 235, 291 S. W., 564.

If the testimony of Bratton is comprehended, it does not indicate that in making the sale of the liquor appellant was acting for the purchaser. It is true that he claimed that the whisky belonged to Lemons. However, Lemons was not in possession of the liquor, was not interviewed by the purchaser, and was not paid any money for the liquor, but it was the appellant who acted in all of these particulars. In refusing to instruct the jury that if the appellant acted for the purchaser alone he should be acquitted, the trial judge, in the opinion of this court, committed no error.

The testimony of Lang was to the effect that he, in company with Jack Bratton and Milton Willman, went to the home of Tate Lemons. Bratton got out of the car. The appellant, McBee, was at a wood pile. A conversation between Bratton and McBee took place in which the latter was asked if he had any whisky. He answered "yes". Then the three (Bratton, McBee and Lang) went to where the whisky was. At the wood pile the appellant was asked the price of the whisky and he said it was $2 a pint. They went about 200 yards from the wood pile to get the whisky, which was in a live-oak thicket. McBee got the whisky from under some leaves, handed it to Bratton and was paid $2 in money. Bratton put the whisky in his pocket, and they returned to the house. Bratton went to where Willman was. They then got into the car and drove off. Lang drank some of the liquid and declared it to be whisky.

There are many averments in the motion for new trial of a general nature charging irregularities in the conduct of the jury. Among them are the statements that the jurors generally discussed and acted upon the statement imputed to juror Evans as shown by the affidavit of George and Wilson Liverman; that juror Turner had stated to the other jurors that the appellant had a bad reputation as a bootlegger. It is thought that the trial court was justified in not governing his action by the affidavit of George and Wilson Liverman giving their version of what they claimed was said in their hearing by juror Evans. We are of the opinion that the judge did no violence to the rights of the accused nor to the principles and practice governing a motion for new trial. On the subject, in Rumfield's case, 98 Texas Crim. Rep., 158, 265 S. W., 153,

it was said: "Having alleged this in his motion, the burden was upon appellant to establish it. He undertook to discharge the burden by attaching to his motion the affidavits of two people to the effect that they heard Mrs. Amerson say that her husband made the statement hereinbefore set out. A fact can no more be established by a hearsay affidavit than it could have been established by the same witnesses undertaking to give such hearsay testimony orally before the court upon the hearing of the motion. The court committed no error in overruling the motion upon the ground stated."

In the Cade case, 96 Texas Crim. Rep., 523, 258 S. W., 484, it was said that when reliance in a motion for new trial is had upon the existence of facts dehors the record, the burden is upon the accused to establish the truth of the averment and not upon the state to disprove it; nor is it necessary for the state to join issue by written pleading. See McConnell v. State, 82 Texas Crim. Rep., 634, 200 S. W., 842; Hickox v. State, 95 Texas Crim. Rep., 173, 253 S. W., 823; Hughes v. State, 106 Texas Crim. Rep., 550, 293 S. W., 575.

The remarks imputed to juror Evans were referable to the testimony of the witness Jack Bratton, which is set forth in the statement of facts and bills of exception as follows: "I was before the grand jury. Probably he did ask me how much we wanted, but if so, I do not remember it. You say that I told him a pint and he said all right, but if he said that I do not remember it. I did testify before the grand jury, and that looks like my signature right there (indicating). I expect that I can read right up here. If I said that I do not remember it. I do not remember it. I do not remember that I said that. I do not remember whether I said it or not. I do not remember whether I said anything in that statement about paying Tate Lemons, or whether or not Lemon's name was mentioned before the grand jury."

As said in the case of Jack v. State, 20 Texas App., 656, and others cited in the original opinion, the comment of jurors in the way of argument and discussion during their endeavor to reach a verdict, when based upon evidence which was before the jury, is not available as a ground for new trial. The testimony given by Bratton, as copied above, is specific in stating that Bratton testified before the grand jury upon the same subject as involved in this appeal, and it is inferable from the examination, as portrayed by the record, that his testimony upon that occasion and upon the present occasion was not entirely in harmony. Such being the case, it was within the province of the jury to estimate and act upon the weight to be given to the testimony of the witnesses in the trial. The remarks imputed to Evans (if it were properly established that he made them) are not regarded as furnishing a ground for concluding that in refusing to grant a new trial there was a breach of the discretion which the law vested in the judge.

The averment in the motion for new trial that there was some statement to the effect that the appellant bore the reputation of a bootlegger is specifically controverted by the affidavit of juror Turner which appears in the motion for new trial.

Touching the general statements in the motion for new trial as to the complaint that the court declined to issue process for the members of the jury who had tried the case to the end that they might be interrogated as to the truth of the averments, the expressions of this court in the case of Vyvial v. State, 111 Texas Crim. Rep., 111, 10 S. W. (2d) 83, are deemed pertinent.

Touching the matter of the complaint of the court's refusal to subpoena the jurors as witnesses, we again call attention to the case of Vyvial v. State, supra, as illustrative of the point that in order to demand an inquiry with reference to the misconduct of the jury, there must be made in the motion a specific averment showing culpable misconduct, and the court is then privileged, by virtue of article 757, C. C. P., to "hear evidence in support of the averment by affidavit or otherwise." It is conceived that in the absence of a showing of some compelling necessity, there would be no breach of the discretion of the trial court to rely upon affidavits alone. See Asher v. State, 102 Texas Crim. Rep., 162, 277 S. W., 1099; Hughes v. State, 106 Texas Crim. Rep., 550, 293 S. W., 575.

The motion for rehearing is overruled.

*Overruled.*